UNISIGN, INC., Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Transportation Cabinet, Department
of Highways, Appellee,

and

Commonwealth of Kentucky, Trans-
portation Cabinet, Department
of Highways, Appellant,

v.

Unisign, Inc., Appellee.

Nos. 1999–SC–0023–DG,
1999–SC–0134–DG.

Supreme Court of Kentucky.

June 15, 2000.

Marrs Allen May, Pikeville, for Appellant.

Albert B. Chandler III, Attorney General, Stuart W. Cobb, Assistant Attorney General, Civil and Environ. Law Div., Frankfort, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed an order of the circuit court granting summary judgment and a permanent injunction in favor of the Transportation Cabinet. The circuit court ordered the removal of three billboards erected by Unisign within 660 feet of Interstate 75 on the basis that the

signs were in violation of the Kentucky Billboard Act, KRS 177.830 through KRS 177.890.

The questions presented are whether KRS 177.860(4) is unconstitutional and whether 603 KAR 3:080 § 1(8) exceeds the statutory authority; whether the circuit court erred in issuing the injunction; whether it was error to fail to join the landowners as indispensable parties, and whether there was selective enforcement of the statutes and regulations.

In 1997, Unisign filed applications with the Transportation Cabinet for permits to erect "off-premises" billboards along Interstate 75 in Scott County, claiming that the proposed signs were within the exception in KRS 177.860(4) for advertising devices in a commercially or industrially developed area. The Transportation Cabinet denied the permits because the proposed locations did not qualify as being in a commercially or industrially developed area as that term is defined in 603 KAR 3:080. Unisign erected two of the billboards anyway and had begun construction of a third when the Transportation Cabinet filed this action seeking a permanent injunction requiring removal of the signs. The Scott Circuit Court granted the injunction. The Court of Appeals affirmed the judgment of the circuit court in an unpublished opinion but found that KRS 177.860(4) was unconstitutionally vague and overbroad and that it was an impermissible delegation of legislative authority. Because it declared the exception under which Unisign sought to erect the billboards was void, it held that the general prohibition against billboards within 660 feet of an interstate highway precluded the erection of the billboards. This Court accepted discretionary review.

The Transportation Cabinet, although it does not disagree with the final holding of the Court of Appeals, sought review of the administrative decision of the Court of Appeals not to publish its opinion. The Cabinet argues that there are cases pending in circuit court with identical issues which are not resolved by the Court of Appeals deci-sion not to publish its case. Unisign contends the problem is not with the statute but with the regulation interpreting it.

## I. Constitutionality

The basis of the denial of the applications was because the area in which Unisign chose to erect the signs did not qualify as a commercially or industrially developed area because it lacked ten separate businesses within 1,620 feet of each other as required by 603 KAR 3:080 § 1(8)(a). The ten separate businesses requirement of the regulation was in effect until November 9, 1972 and reinstated April 5, 1996. In the interim, only one business was required in a commercially or industrially developed area. The Department claims it reestablished the ten separate businesses regulation because it was necessary to control the erection and maintenance of advertising signs. Failure of the Commonwealth to effectively control the erection and maintenance of advertising signs could result in the withholding of federal highway funds and possibly the repayment of bonus money to the federal government for failing to comply with a Bonus Agreement of 1971. The area in question is zoned industrial, but does not contain ten separate businesses within 1,620 feet of each other and is outside the Georgetown urban area boundaries.

The pertinent part of KRS 177.860(4) is set out as follows:

> (4) Advertising devices which otherwise comply with the applicable zoning ordinances and regulations of any county or city, and which are to be located in a commercially or industrially developed area, in which the commissioner of highways determines, in exercise of his sound discretion, that the location of the advertising devices is compatible with the safety and convenience of the traveling public.

The significant parts of 603 KAR 3:080 is set out as follows:

(8) **Commercially or industrially developed area** means, as it is applied to interstate and parkway highways only:

(a) Any area within one hundred (100) feet of, and including any area where there are located within the protected area at least ten (10) separate commercial or industrial enterprises, not one (1) of the structures from which one (1) of the enterprises is being conducted is located at a distance greater than one thousand six hundred twenty (1620) feet from any other structure from which one (1) of the other enterprises is being conducted; and

. . . . .

(c) Not less than ten (10) of the enterprises referred to in paragraph (a) of this subsection are at the time of the permit application and were on March 10, 1960, located in an area governed by state or local zoning laws and in compliance with the state and local zoning laws and administrative regulations. If there was no local zoning ordinance in effect on March 10, 1960 or if there is no local zoning ordinance in effect at the time of the permit application, the provisions of paragraph (a) of this subsection shall not be applicable.

■ In compliance with an Act of Congress known as the *Highway Beautification Act of 1965*, 23 U.S.C. § 131, the Kentucky General Assembly enacted KRS 177.830 to KRS 177.890, the Kentucky Billboard Advertising Statute, which thereby made the state eligible for federal funding. The clear, basic intent of both the federal and state law is to prohibit billboards within 660 feet of interstate highways for safety and aesthetic purposes. KRS 177.850 provides in pertinent part that the law is "to provide maximum visibility along interstate highways ... prevent unreasonable distraction of operators of motor vehicles ... to preserve and enhance the natural scenic beauty ... promote maximum safety, comfort and well-being of the users of said highways."

■ *Moore v. Ward,* Ky., 377 S.W.2d 881 (1964), upheld the constitutionality of the Kentucky Billboard Act, and determined that the regulations imposed in connection with the Act were reasonable. *See also Flying J Travel Plaza v. Commonwealth, Transportation Cabinet,* Ky., 928 S.W.2d 344 (1996). In 1964, the ten minimum businesses requirement was in effect. The court in *Moore, supra,* recognized that the determination of the method is strictly a legislative matter with which the courts would not interfere if it has a reasonable relationship to a legitimate public purpose. Accordingly, in order to erect a billboard in the prohibited zone, an applicant must qualify for an exception pursuant to KRS 177.830 to KRS 177.890.

In order to be eligible for the 660 feet exception to the no billboard rule for interstate highways, an applicant must comply with the local zoning ordinances and be located in a commercially or industrially developed area as defined in 603 KAR 3:080. That regulation requires the site to have at least ten separate commercial or industrial enterprises within 1,620 feet of each other to qualify as a commercially or industrially developed area.

Pursuant to CR 56.03, the trial judge correctly considered the affidavit placed in the record by Sandra G. Davis, staff assistant to the Secretary of the Transportation Cabinet, which recited that the ten (10) separate businesses requirement was reintroduced because many billboard companies were abusing the apparently more relaxed standards for commercially or industrially developed areas to erect billboards in rural undeveloped areas. The requirement was readopted because its use was found to be constitutional and was necessary to effectively control the advertising devices as required in the Bonus Agreement, Section III(a). The affidavit stated that failure to enforce the billboard laws would result in significant losses of federal funds. It also stated that some of the practices endangered the federal high-

way funding and frustrated the intent of the General Assembly.

There are several distinct types of highways mentioned within KRS 177.830, two of which, interstate highways and federal aid primary highways, are treated separately and have different exception qualifications in 603 KAR 3:080. The differences between the definition in KRS 177.830(7) which states:

> Commercial or industrial zone adjacent to a federal aid primary highway means an area zoned to permit business, commerce or trade pursuant to lawful ordinance or regulation,

and the language in the Bonus Agreement which states:

> (B) Commercial or industrial zone means an area zoned for business, commerce or trade pursuant to lawful ordinance or regulation.

does not affect the definition of commercially or industrially developed area which relates to interstate highways.

■ The absence of the words "federal aid primary highway" demonstrates the definite distinction made between federal aid primary highways and interstate highways and the definitions that pertain to those phrases.

*Commonwealth v. G.L.G., Inc.*, Ky., 937 S.W.2d 709 (1997), held that the definition for interstate "commercially or industrially developed areas" does not require a commercial or industrial zone for a billboard exception to apply. This Court voided a regulation requiring zoning in commercially or industrially developed areas because the language of KRS 177.860(4), does not require the existence of zoning ordinances before the area can be deemed commercial or industrial. There is no intention to combine or confuse the two definitions. However, as noted by the circuit judge, in contrast to the zoning requirement regulations, the ten separate businesses requirement does not contradict KRS 177.860(4). Whether Scott County has zoned the property for commercial or industrial use is of

no consequence in regard to this particular requirement for the exception to apply.

■ We must agree with the circuit court that the regulation was a valid constitutional delegation of power and not vague in 1967 when it was first announced, and it is still not vague or an invalid delegation of power. *Southeastern Displays, Inc. v. Ward*, Ky., 414 S.W.2d 573 (1967). *Ward, supra,* provides that the regulation permits exceptions to the ban on advertising in such a manner as to allow certain signs to be constructed under certain conditions. The ten (10) business minimum is not constitutionally unreasonable.

## II. Premature Injunction

■ We agree with the Court of Appeals that the argument by Unisign claiming that the issuance of the injunction was premature was without merit. KRS 177.830 states that an advertising device includes "structures erected or used in connection with a display of any device and all lighting and other attachments used in connection therewith . . . ." The application by Unisign and the leases entered into with the landowners clearly demonstrate that the purpose of erecting the structures was to display roadside advertising. Consequently, they were clearly erected in connection with the display of advertising devices. The circuit court did not commit any error by issuing the injunction. The emphasis placed on the word "used" by Unisign is unconvincing.

## III. Indispensable Parties

■ The landowners are not indispensable parties in the case. Unisign did not erect its advertising devices pursuant to a lease granted by the lessors, but actually in contravention of its terms, particularly, Section 4 of the lease agreement which states in part that the lessee shall secure from the proper authorities . . . all required licenses and permits before commencing construction of the billboards. The lessors, landowners, have no interest

in the billboards until they are legally erected. The entire burden for obtaining permits is placed on Unisign which violated the terms of the lease by erecting its structures without obtaining the required permits.

The injunction in this case is not directed at the landowners and it does not require them to do anything. They still retain the right to use their land for any legal purpose. Reliance by Unisign on *Mendell v. Golden–Farley of Hopkinsville, Inc.,* Ky.App., 573 S.W.2d 346 (1978), is misplaced. Here, the landowners have no independent defense of the advertising devices to make and they have no right to have illegal advertising signs on their property. Unlike the Kinder Corporation in *Mendell, supra,* they cannot claim to have acted in good faith because they are presumed to have knowledge of the law. *See Cotner v. Grissley,* Ky., 447 S.W.2d 603 (1969). *See also Commonwealth, Dept. of Fish & Wildlife Resources v. Garner,* Ky., 896 S.W.2d 10 (1995); CR 19.01.

IV. Selective Enforcement

There is no evidence in this record to support the allegation by Unisign of discriminatory enforcement or selective enforcement of the Billboard Act. There is no evidence that Unisign has been singled out for enforcement or that others in the same class have been allowed to violate the law.

In any case submitted for summary judgment, there is an obligation to present at least some affirmative evidence showing that there is a genuine issue of material fact for trial. CR 56.03. The only evidence submitted here is a list of Transportation Cabinet cases in which the Billboard Act is being litigated against various defendants throughout the state. Unisign had sufficient opportunity to place affirmative evidence in the record to support its allegations. It failed to do so. There are no material facts which exist so as to require a trial. We find this argument to be without merit.

The definition of commercially or industrially developed areas found in the regulation section, 603 KAR 3:080 § 1(8)(a), is properly authorized by statute, is not an unconstitutional delegation of legislative authority, is not vague or abstract, is not unreasonable or irrational and allows the erection and maintenance of signs in commercial and industrial areas. The area in which Unisign erected its advertising devices does not qualify as a commercially or industrially developed area because there are fewer than ten (10) separate businesses within 1,620 feet of each other. Thus, Unisign has violated the provisions of the Billboard Act as implemented in Kentucky.

The decision of the Court of Appeals only insofar as it prohibits the erection of advertising devices by Unisign is affirmed, and the judgment of the circuit court is also affirmed and reinstated.

All concur.